IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALEXANDER TOLENTINO and**<br>**DENISE TOLENTINO**<br><br>　　　　　　　**Plaintiffs**<br><br>　v.<br><br>**STATE FARM INSURANCE COMPANY**<br><br>　　　　　　　**Defendant** | CIVIL ACTION<br>NO. 15-00031 |

**PAPPERT, J.**                                                                                     **MAY 12, 2015**

<u>**MEMORANDUM**</u>

　　　　Plaintiff Alexander Tolentino ("Tolentino") and his wife Denise filed suit against State Farm Mutual Automobile Insurance Company ("State Farm") in connection with State Farm's denial of a claim for underinsured motorist benefits ("UIM"). The parties have submitted cross-motions for summary judgment on the threshold issue of whether the Tolentinos' insurance policies with State Farm provide the requested UIM coverage. Based on the undisputed material facts, the Court finds that the Tolentinos did not have UIM coverage under the applicable policy at the time of the accident at issue. State Farm, therefore, is entitled to judgment as a matter of law with respect to the Tolentinos' claims. State Farm's motion for summary judgment is granted and the Tolentinos' motion for summary judgment denied.

**Background**

　　　　The material facts in this case are straightforward. Tolentino was injured in an accident while riding his Victory Boardwalk motorcycle. (Pls.' Mot. for Summ. J. ¶ 1, Doc. No. 15.) The accident was caused by the negligence of Deborah Parker Fortunato. (*Id.* ¶ 2.) Tolentino eventually settled with Ms. Fortunato for the full amount of her policy limits, but this did not fully compensate Tolentino for his injuries. (*Id.* ¶¶ 4, 6.)

As a result, Tolentino submitted a UIM claim to State Farm. (*Id.* ¶ 6, Ex. A.) The Tolentinos had two automobile insurance policies with State Farm at the time of the accident. One covered only the Victory Boardwalk (the "Motorcycle Policy"). The other covered a Honda CRV and a Nissan Titan (the "Car Policy"). The Motorcycle Policy had initially covered a Suzuki GSX, but Tolentino asked State Farm to replace the Suzuki with the Victory a few months prior to the accident.

State Farm denied Tolentino's UIM claim under both policies. (*Id.*, Ex. B.) According to State Farm, Tolentino had waived UIM coverage under the Motorcycle Policy. (*Id.*) State Farm further asserted that UIM coverage was not available under the Car Policy because Tolentino was injured while operating a vehicle he owned but that was not covered under the policy.[1] (*Id.*)

In response to State Farm's denial of benefits, Tolentino demanded that State Farm produce Tolentino's rejection of UIM benefits under the Motorcycle Policy. (*Id.* ¶ 6, Ex. A.) State Farm provided a form titled "Rejection of Underinsured Motorist Protection" (the "Rejection Form"). (*Id.*, Ex. C.) The Rejection Form bore Tolentino's signature and was dated May 12, 2003, the same day that Tolentino first applied for the Motorcycle Policy. The Rejection Form contained the following statement:

> By signing this waiver, I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

(*Id.*) The Rejection Form contained a second paragraph reading:

---

[1] The Car Policy included UIM coverage, but contained an exclusion for "an insured who sustains bodily injury while occupying a motor vehicle owned by you . . . if it is not [a car listed on the declarations page] or a newly acquired car." (Def.'s Mot. for Summ. J., Ex. 1E.) The Car Policy defined a car, including a newly acquired car, to be a vehicle with four or more wheels. (*Id.*) State Farm told Tolentino that his accident fell within this exclusion. (Pls.' Mot. for Summ. J., Ex. B.)

> I understand that this acknowledgement of coverage rejection shall be applicable, as of the date specified above, to the policy of insurance identified above or for which application is being made, on all replacement policies and on all renewals of either this policy or any replacement policy, unless I request in writing a different selection for such coverage.

(*Id.*)  There was a space above this second paragraph for a policy number, but that space was blank.  These were the only two paragraphs appearing on the Rejection Form.

The Tolentinos then filed this suit, demanding that State Farm pay their UIM claim.[2]  The parties have now submitted cross-motions for summary judgment solely on the issue of coverage.  Tolentino does not dispute that he signed the Rejection Form.  (*See id.* ¶ 11.)  Rather, he contends that the Rejection Form is facially invalid because it does not contain the policy number, and he is therefore entitled to judgment as a matter of law.  (*Id.*)  State Farm contests Tolentino's characterization of the Rejection Form as invalid and insists that it is entitled to judgment as a matter of law based on Tolentino's rejection of UIM benefits under the Motorcycle Policy.  (Def.'s Opp'n ¶ 11, Doc. No. 16.)[3]

**Legal Standard**

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  A genuine issue of

---

[2]  In their Complaint, the Tolentinos alleged that they were entitled to UIM benefits under both the Motorcycle Policy and the Car Policy.  (Compl. ¶ 16.)  They have since abandoned their claim with respect to the Car Policy.  (*See* Pls.' Mot. for Summ. J. ¶ 5 ("Plaintiffs are looking to their own insurance company, State Farm Mutual Automobile Insurance Company, for underinsured motorist benefits only under the policy pertaining to the motorcycle involved in the accident.")) Furthermore, the Court has already ruled that the subsequent abandonment of this claim did not strip the Court of subject matter jurisdiction.  (Order dtd. Mar. 6, 2015, Doc. No. 14.)  The Court accordingly addresses the parties' arguments with regard to UIM coverage under the Motorcycle Policy only.

[3]  The Tolentinos have filed a motion to strike State Farm's brief in opposition to the Tolentinos' motion for summary judgment and State Farm's reply brief in support of its own motion for summary judgment.  Both of the briefs at issue, however, were filed in accordance with the local rules and applicable judge's policies and procedures.  The Court will deny the motion to strike by separate order.

material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). "When confronted with cross-motions for summary judgment . . . the Court considers each motion separately." *Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 422 (E.D. Pa. 2009).

**Discussion**

Disposition of this case hinges on the validity of the Rejection Form. If the Rejection Form is valid, there is no UIM coverage available under the Motorcycle Policy; if it is not valid, there is UIM coverage available equal to the Motorcycle Policy's bodily injury coverage limits. *See* 75 Pa.C.S. § 1731(c.1) ("If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits."). Tolentino's sole argument regarding the Rejection Form is that it is not valid because it does not list the policy number to which it applies. (Pls.' Mot. for Summ. J. ¶ 11.) Given the undisputed material facts presented by the parties, however, no reasonable jury could find that Tolentino had UIM coverage under the Motorcycle Policy at the time of the accident.

Subchapter C of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1731-1738, governs the validity of a Pennsylvania insured's waiver of UIM coverage. Specifically, 75 Pa.C.S. § 1731(c) requires that insureds be informed that they can reject UIM coverage by signing a written rejection form reading:

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

This form must be on its own sheet of paper in prominent type and location. 75 Pa.C.S. § 1731(c.1). The form "must be signed by the first named insured and dated to be valid." *Id.* Any rejection form that does not specifically comply with these statutory mandates is void. *Id.*

Here, Tolentino's Rejection Form meets all of the statutory mandates. The Rejection Form was on a separate sheet of paper. (Pls.' Mot. for Summ. J., Ex. D.) It contained the exact language specified by the MVFRL. (*See id.*) It was dated and signed by Tolentino, who was the first named insured under the Motorcycle Policy. (*See id.*; Pls.' Opp'n, Ex. B, Doc. No. 17.)[4] The Tolentinos' contention that the Rejection Form is not valid because it does not include a policy number has no legal basis under the MVFRL.

The Tolentinos insist that the non-precedential Pennsylvania Superior Court decision of *Bricker v. State Farm Mut. Auto. Ins. Co.*, No. 102 MDA 2014, slip op. (Pa. Super. Ct. Aug. 22, 2014) is dispositive of the issues in this case. There, Bricker had purchased an auto insurance policy from State Farm Fire and Casualty Company in 2000 under policy number 016-4416.

---

[4] Plaintiffs include a copy of the Motorcycle Policy application as Exhibit B to their statement of disputed facts in opposition to State Farm's motion, suggest that the application shows Denise Tolentino as the applicant, and state that Alexander Tolentino's name does not appear until page 3 of the application as an additional driver. This statement is simply false. Page 1 of the application clearly lists Alexander Tolentino in the name and mailing address section of the application.

5

Bricker rejected her right to UIM coverage under this policy. In August 2004, Bricker signed another UIM rejection form and several other forms that set forth her policy limits. All of these forms referred to the old policy number, but some of them also referred to a new policy number for a policy that was to become effective September 1, 2004. The UIM rejection form referred only to the old policy number. On September 1, 2004, policy number 016-4416 expired and State Farm Mutual Automobile Insurance Company, a separate entity from State Farm Fire and Casualty Company, issued a new policy with the new policy number, 0730-575-38. Bricker later made a claim for UIM benefits under the new policy based on an accident that occurred in January of 2005.

The Superior Court ruled that the trial court had erred in granting summary judgment to State Farm based on a finding that the UIM rejection applied to the new policy rather than to the old one. *Id.* at 11. The Court noted that the rejection form was statutorily valid, but there was, at the least, ambiguity as to which policy it applied. The Court also stated that the rejection form "plainly referred to policy number 016-4416" and did not "refer to policy number 073-0575-38." *Id.* at 10. It also noted that the policies were issued by two separate corporate entities. The Court concluded, "The plain language of the policy, taken as a whole, leaves doubt as to which policy the forms actually refer, and the factual record is not sufficiently developed to aid in the clarification of this ambiguity. Accordingly, we conclude, as a matter of law, that the forms are ambiguous as to which policy they refer." *Id.* at 11.

Here, there is no such ambiguity. The Rejection Form is dated May 12, 2003, the same day that Tolentino applied for the Motorcycle Policy. It states that it applies to "the policy of insurance identified above *or for which application is being made* . . . ." (Pls.' Mot. for Summ. J., Ex. D.) (emphasis added). Neither party contends that Tolentino applied for any other

6

insurance policy with State Farm on that date.  Furthermore, the Car Policy had been in place well before Tolentino signed the Rejection Form.  (*See* Pls.' Opp'n, Ex. B.)  The Rejection Form does not reference the policy number for the Car Policy.  The Rejection Form unmistakably applied to the Motorcycle Policy, and no reasonable jury could find otherwise.

The Motorcycle Policy renewal notices confirm this lack of ambiguity.  Between his initial application in May 2003 and the accident in June 2013, Tolentino received nine separate renewal notices from State Farm regarding the Motorcycle Policy.  (Def.'s Mot. for Summ. J., Ex. 1D.)  None of these renewal notices showed any premiums or policy limits for UIM coverage.  To the contrary, they each prominently included the statement "**THIS POLICY DOES NOT PROVIDE PROTECTION AGAINST DAMAGES CAUSED BY AN UNINSURED OR UNDERINSURED MOTORIST** . . . ."  (*Id.*) (emphasis in original).  The Car Policy declarations page on the other hand did not include this statement, but set forth premiums and coverage limits for uninsured and underinsured motorist coverage.  (*Id.*, Ex. 3.)  The Rejection Form clearly applied to the Motorcycle Policy.  *Cf. Rupert v. Liberty Mut. Ins. Co.*, 291 F.3d 243, 249 (3d. Cir. 2002) ("Allowing Timothy Rupert to reap the benefits of stacked coverage without having paid for stacked coverage not only seems unfair, but could compromise the legislative goal of reducing the cost of insurance.").

Finally, Tolentino was not required to execute a new waiver of UIM coverage when he replaced the Suzuki GSX with the Victory Boardwalk on the Motorcycle Policy.  A valid rejection of UIM coverage continues for the life of an insurance policy until affirmatively changed.  *See Glazer v. Nationwide Mut. Ins. Co.*, 872 F. Supp. 2d 396, 402 (M.D. Pa. 2012) ("[A] decision to reject UIM benefits carries forward until affirmatively changed."); *Smith v. Hartford, Ins. Co.*, 849 A.2d 277, 281 (Pa. Super. Ct. 2004) (same).  Furthermore, adding or

substituting a vehicle on an existing policy does not constitute issuing a new policy under the MVFRL so that a new rejection form is required.  *See Seiple v. Progressive N. Ins. Co.*, 568 F. App'x 183, 187 (3d Cir. 2014) (rejecting argument that insurer was required to secure a new UIM stacking waiver each time the insured added an additional motorcycle to his policy); *State Auto Prop. & Cas. Ins. Co. v. Pro Design P.C.*, 566 F.3d 86, 93 (3d Cir. 2009) (holding that the "mere addition of a vehicle to an existing policy is not a purchase" of a new policy under the MVFRL).  Finally, after Tolentino replaced the Suzuki GSX with the Victory Boardwalk under the Motorcycle Policy, State Farm issued a revised declarations page that included the statement "THIS POLICY DOES NOT PROVIDE PROTECTION AGAINST DAMAGES CAUSED BY AN UNINSURED OR UNDERINSURED MOTORIST"  (Def.'s Mot. for Summ. J., Ex. 2.) (emphasis in original).

Given the undisputed facts and evidence submitted by the parties, there is no reasonable basis upon which a jury could conclude anything other than that Tolentino validly rejected UIM coverage when he applied for the Motorcycle Policy and that this rejection was still in effect at the time of the accident.  As a result, UIM benefits are not available under the Motorcycle Policy, and State Farm is entitled to judgment as a matter of law.

An appropriate order follows.


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.